UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

LANCE W. HARTZOG,                    :
                                     :
        Petitioner                   :        No. 4:CV-05-1635
                                     :
    vs.                              :        (Petition Filed 8/11/05)
                                     :
MARILYN BROOKS,                      :        (Judge Muir)
                                     :
        Respondent                   :

**ORDER**

April 20, 2006

I. **Background**

Petitioner, Lance W. Hartzog ("Hartzog"), an inmate presently incarcerated at the State Correctional Institution, Albion, Pennsylvania filed the above-captioned petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1). On September 14, 2005, in accordance with United States vs. Miller, 197 F.3d 644 (3d Cir. 1999), and Mason vs. Meyers, 208 F.3d 414 (3d Cir. 2000), the court issued an order advising petitioner that he could:

> (1) have the court rule on [his] petition as filed, that is, as a § 2254 petition for writ of habeas corpus and heard as such, but lose his ability to file a second or successive petition absent certification by the Court of Appeals, or
>
> (2) withdraw his petition and file one, all inclusive

§ 2254 petition within the one-year statute of
limitations period prescribed by 28 U.S.C. § 2244(d).

(Doc. 2). On September 21, 2005, Hartzog filed a notice of
election in which he opted to have the court consider his
petition as filed. (Doc. 3). A response to the petition having
been filed, the petition is ripe for disposition.[1] For the
reasons that follow, the court will deny the petition.

**Procedural Background**

The following background has been extracted from the opinion
of the Superior Court of Pennsylvania, addressing the
petitioner's appeal from the denial of his petition for relief
pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A.
§§ 9541-9546. (Doc. No. 7, Ex. 7, Opinion of the Superior Court
of Pennsylvania dated May 16, 2005).

> The PCRA Court set forth the factual background and
> procedural history of this case as follows:
>
> On May 4, 1999, the Commonwealth of Pennsylvania
> (hereinafter "Commonwealth") filed an Information
> charging [Appellant]. . .with one count of Criminal
> Homicide based upon an incident that occurred on
> February 17, 1999, wherein Robert Henson was fatally
> stabbed in the chest by [Appellant]. On March 7, 2000,
> [Appellant] stood before this Court and entered a plea

---

[1]Although provided with an opportunity to file a
traverse, (Doc. No. 2), petitioner did not file one.

> of Guilty to Murder in the Third Degree [, 18 Pa.C.S.A. § 2502]. At that time, this Court sentenced [Appellant] to imprisonment for a term of eighteen (18) to thirty-six (36) years. Attorney Paul Walker represented [Appellant] at the Guilty Plea and Sentencing Hearing.

(Doc. No. 7, Ex. 7, Superior Court opinion at p. 2, citing PCRA Court Opinion, 7/13/04 at 1-2).

On April 2001, Hartzog filed a petition under Pennsylvania's Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541, et seq. ("PCRA"). Id. Evidentiary hearings were held on March 27, 2002 and March 7, 2003. Id. On July 18, 2003, the PCRA court denied Hartzog's PCRA petition. Id.

On August 30, 2004, Hartzog filed an appeal to the Pennsylvania Superior Court. (Doc. No. 7, Ex. 7). He argued that since the PCRA court failed to give him notice of the July 18, 2003 Order denying his PCRA petition, and he did not discover that the petition had been denied until after August 17, 2004, the Superior Court should consider his appeal as timely. Id. The Superior Court determined that the PCRA Court's docket failed to indicate that Hartzog was notified by certified mail of the PCRA Court's July 18, 2003 denial of his PCRA petition, and considered the appeal on the merits. Id.

The issues raised on appeal before the Superior Court were as follows:

1.    Where nothing appears on the record to show that Appellant was informed that his PCRA petition was denied by the court, and appointed counsel abandons him, do the rules of criminal procedure mandate that the appellant's appeal be deemed timely filed?

2.    When both the written and on-the-record colloquy's [sic] fail to explain the legal element of malice to an illiterate defendant who had a viable defense to a malicious killing, should trial counsel be deemed ineffective for not objecting to such a clear defect in the guilty plea proceeding?

3.    Where trial counsel represented a chief prosecution witness before the appellant, is he afforded the effective representation of counsel when such a potential conflict exists during the guilty plea process?

4.    When trial counsel admits that appellant had a strong defense to third degree murder, would effective representation advise a plea of guilty to a malicious killing?

5.    Where an illiterate defendant requests his counsel to file for reconsideration of a "negotiated" sentence following his guilty plea, does trial counsel render effective assistance when refusing to file to withdraw the plea and file a direct appeal when he knew that appellant wanted something filed?

(Doc. No. 7, Ex. 7 at p. 3).

On May 16, 2005, the Superior Court issued a Memorandum

4

Opinion affirming the PCRA court's denial of Hartzog's PCRA petition. (Doc. 7, Exhibit 7).

On August 11, 2005, Hartzog filed the instant petition for writ of habeas corpus in which he raises the following claims:

(1) Counsel was ineffective for not objecting to the failure of the guilty plea colloquy to explain "malice".

(2) Counsel was ineffective based on a "conflict of interest" by representation of a prosecution investigator.

(3) Counsel was ineffective for advising Hartzog to plead guilty when he had a defense to third degree murder.

(4) Counsel was ineffective for failing to file a direct appeal when requested by Hartzog.

(Doc. No. 1, petition).

## II.  **Discussion**

### A.  **Exhaustion**

"A federal court may not grant a writ of habeas corpus unless (1) 'the applicant has exhausted the remedies available in the courts of the state', (2) no such state remedy is available or (3) available remedies are ineffective to protect the applicant's rights.  28 U.S.C. § 2254(b)(1)."  Henderson vs. Frank, 155 F.3d 159, 164 (3d Cir. 1998).  "The exhaustion

5

requirement is satisfied when the state courts have had an opportunity to pass upon and correct alleged constitutional violations." Evans vs. Court of Common Pleas, Delaware County, Pa., 959 F.2d 1227, 1230 (3d Cir. 1992).   The exhaustion requirement "is not a mere formality.  It serves the interests of comity between the federal and state systems by allowing the state an initial opportunity to determine and correct any violations of a federal prisoner's federal rights."  Gibson vs. Scheidemantel, 805 F.2d 135, 138 (3d Cir. 1986). "Unless it would be patently futile to do so [state prisoners] must seek relief in state court before filing a federal habeas petition...."  Santana vs. Fenton, 685 F.2d 71, 77 (3d Cir. 1982).

The habeas corpus petitioner shoulders the burden of establishing exhaustion of state court remedies.  McMahon vs. Fulcomer, 821 F.2d 934, 940 (3d Cir. 1987). The threshold inquiry in the exhaustion analysis is whether the claims asserted in the habeas corpus petition have been "fairly presented" to the state courts.  Picard vs. Connor, 404 U.S. 270, 275 (1971).  "All claims that a petitioner in state custody attempts to present to a federal court for habeas review must

have been fairly presented to each level of the state courts." Lines vs. Larkins, 208 F.3d 153, 159 (3d Cir. 2000), <u>cert. denied</u>, 531 U.S. 1082 (2001).  Fair presentation requires that the "substantial equivalent" of a petitioner's federal habeas claims be presented to the state courts.  Lambert vs. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).

The respondent concedes that petitioner has exhausted his state court remedies. The merits of the claims will therefore be addressed.

**B.  <u>Consideration of the claims on the merits</u>**

"The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell vs. Cone, 535 U.S. 685, 693 (2002).  Specifically, when a federal-law issue has been adjudicated on the merits by a state court, the federal court reverses only when the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that

7

was based on an unreasonable determination of the facts in light
of the evidence presented in the State court proceeding." 28
U.S.C. § 2254(d)(2). See generally, Moore vs. Morton, 255 F.3d
95, 104-05 (3d Cir. 2001).   The Court has held that the
"contrary to" and "unreasonable application" clauses of §
2254(d)(1) have independent meaning. Williams vs. Taylor, 529
U.S. 362, 404-405 (2000). As explicated in Bell, 535 U.S. at
694:

> A federal habeas court may issue the writ under the
> 'contrary to' clause if the state court applies a rule
> different from the governing law set forth in our
> cases, or if it decides a case differently than we have
> done on a set of materially indistinguishable
> facts....The court may grant relief under the
> 'unreasonable application' clause if the state court
> correctly identifies the governing legal principle from
> our decisions but unreasonably applies it to the facts
> of the particular case....The focus of the latter
> inquiry is on whether the state court's application of
> clearly established federal law is objectively
> unreasonable . . .

This deferential standard of review applies to state court
decisions on ineffective assistance of counsel claims. Id. at
694-98.

The "clearly established federal law" applicable to
Hartzog's claims of ineffective assistance of counsel is the
familiar two-pronged inquiry the United States Supreme Court

8

articulated in Strickland vs. Washington, 466 U.S. 668, 688 (1984): (1) was counsel's performance deficient, and (2) did the deficient performance prejudice the defense? Prejudice has been defined as a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. See also Frey vs. Fulcomer, 974 F.2d 348, 358 (3d Cir. 1992) ("[A] petitioner must demonstrate a reasonable probability that, but for the unprofessional errors, the result would have been different."). On habeas corpus review, the pertinent inquiry is whether the state court decision is contrary to or an objectively unreasonable application of Supreme Court precedent. Rompilla vs. Horn, 355 F.3d 233, 250 (3d Cir. 2004).

Petitioner in this case advances no argument that the Superior Court decision is contrary to extant United States Supreme Court precedent. In this regard, petitioner does not maintain that the ineffective assistance test applied by the state court is inconsistent with the test established in Strickland and developed in its progeny. Furthermore, there does not appear to be any Supreme Court case that found ineffective assistance under circumstances indistinguishable or even similar

9

to those presented here.  Our Court of Appeals has held that "a state court decision that applied the Pennsylvania test did not apply a rule of law that contradicted <u>Strickland</u> and thus was not 'contrary to' established Supreme Court precedent." Rompilla vs. Horn, 355 F.3d 233, 250 (3d Cir. 2004), citing, Werts vs. Vaughn, 228 F.3d 178, 202-204 (3d Cir. 2000), <u>cert</u>. <u>denied</u>, 532 U.S. 980 (1987). The Pennsylvania Superior Court applied the governing Pennsylvania test in this case, and its decision, therefore, cannot be regarded as "contrary to" Supreme Court rulings.

The dispositive question, then, is whether any of the Superior Court's rulings at issue here reflect an unreasonable application of the <u>Strickland</u> test. To carry his burden on this claim, petitioner "must demonstrate that 'the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under <u>Strickland</u>.'" <u>Rompilla</u>, 355 F.3d at 250. Each asserted instance of ineffective assistance will be considered against this standard.

**1. Counsel's failure to object to the trial court's explanation of "malice" during the guilty plea colloquy.**

10

Hartzog states in his petition that "during the guilty plea colloquy, the trial court explained the legal element of 'malice' for third degree murder as 'ill will'" and that petitioner "is illiterate and did not understand the definition of malice before he plead guilty to third degree" and "trial counsel failed to object to the failure of the trial court to explain malice." (Doc. No. 1, petition).

Due process guarantees require that a defendant's plea be voluntary and intelligent. Bousley vs. United States, 523 U.S. 614, 618 (1998); Brady vs. United States, 397 U.S. 742, 748 (1970); Boykin vs. Alabama, 395 U.S. 238-242 (1969). As such, no criminal defendant should plead to a crime unless, and until, he has had explained to him and understands all of his constitutional rights and protections, including the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment, the right to trial by jury, and the right to confront one's accusers. In the <u>Boykin</u> case, the United States Supreme Court emphasized the importance of a judge's duty in ensuring that a criminal defendant have a full understanding of what the plea connotes and its consequences by "canvassing the matter" on the record. <u>Boykin</u>, 395 U.S. at 243-44. The failure to

11

specifically articulate these rights, however, is not dispositive if the circumstances otherwise establish that the plea was constitutionally acceptable. United States vs. Stewart, 977 F.2d 81, 85 (3d Cir. 1992), cert. denied, 507 U.S. 979 (1993)(plea colloquy adequate despite trial court's failure to enumerate Boykin rights given that those rights were reviewed in prior plea colloquy that occurred only six weeks earlier.)

A plea is voluntary if the accused understands the nature of the charges against him and the constitutional protections that he is waiving. Henderson vs. Morgan, 426 U.S. 637, 645 n.13 (1976). Further, the plea cannot be induced by threats or misrepresentations. The voluntariness of a plea presents a question of law. Marshall vs. Lonberger, 459 U.S. 422, 431-32 (1983). However, state court determinations of underlying questions of fact constitute matters which should receive deference under § 2254:

> [A]lthough "the governing standard as to whether a plea of guilty is voluntary for purposes of the federal Constitution is a question of federal law," questions of historical fact, including inferences properly drawn from such facts, are in this context entitled to the presumption of correctness accorded state court factual findings under [former] 28 U.S.C. 2254(d).

12

Parke vs. Raley, 506 U.S. 20, 35 (1992).
Thus, the issue whether a defendant understood the consequences
of pleading falls within the scope of factual findings entitled
to deference.  <u>See</u> Iaea vs. Sunn, 800 F.2d 861, 864 (9th Cir.
1986).

A plea is knowing and intelligent if it is done "with
sufficient awareness of the relevant circumstances and likely
consequences." <u>Brady</u>, 397 U.S. at 748.  The plea is intelligent
and knowing where there is nothing to indicate that the
defendant is incompetent or otherwise not in control of his or
her mental faculties, is aware of the nature of the charges, and
is advised by competent counsel.  <u>Id</u>. at 756.

At the oral plea colloquy, Hartzog stated that he completed
his education through ninth grade, and that he did not read or
write English very well.  (Doc. No. 7, Ex. 2, N.T., 3/7/00,
Guilty Plea Hearing, pp. 4, 12).  Hartzog indicated that,
subsequent to his arrest in this matter, he was given a mental
evaluation, which was unremarkable, and that he understood the
plea proceeding.  <u>Id</u>. at 14.  He further testified that he was
not under the influence of any drugs or alcohol that would
interfere with his ability to understand the plea proceeding.

Id. at 15.  He also indicated that an investigator examined the case, that he discussed the case with plea counsel, and the he was satisfied with counsel's representation.  Id. at 15-16.

Hartzog further testified that he understood he was waiving his right to a jury trial and the presumption of innocence, id. at pp. 16-18, and that he understood that he was admitting that he committed the murder of the victim.  Id. at pp. 17, 18.  The trial court also made certain that Hartzog understood that, in exchange for the plea of guilty of third-degree murder, the Commonwealth was agreeing not to prosecute him for first-degree murder, and was agreeing to withdraw his remaining charges.  Id. at 20.

Additionally, the record reflects that Hartzog understood that the Commonwealth agreed not to oppose the imposition of a sentence to run concurrently with any time to be served as a result of Hartzog's violation of his parole.  Id. at pp. 20, 21. Hartzog indicated that no other promises had been made to him in exchange for the entry of his plea, and that no one had threatened, forced, or coerced him into entering the guilty plea.  Id. at 21.  Moreover, the trial court made certain that Hartzog was aware of the possible range of the sentence, and

that he knew that the court was not bound by the agreement.  Id.

at 21, 22.

When the trial court stated that Hartzog was pleading guilty

to stabbing Robert Henson "intentionally but not with the

specific intent to kill, the prosecutor interjected:

> Your Honor, just so it's clear for the record, that
> would be with malice but not with the specific intent
> to kill.  I know it's not in the colloquy but I think
> it should be read.

Id. at 24.  The trial court agreed and replied:

> Yes, a third degree homicide is a killing with malice
> but lacking the specific intent to kill.   Under
> Pennsylvania law, malice means ill will, okay?

Id.  Hartzog indicated that he understood the element of malice,

the he understood the full meaning of the plea he was entering,

and that he desired to plead guilty.  Id. at 24-26.

Immediately after the court accepted the plea, Hartzog's

counsel stated on the record that he had explained to Hartzog

that the reason the guilty plea colloquy indicated that the

crime was committed without specific intent was because Hartzog

intentionally did the act of stabbing the victim, regardless of

whether he intended the consequences of the stabbing.  Id. at

27.  Hartzog's counsel also stated that there was no dispute as

15

to whether Hartzog had acted with malice.  Id.  The trial court further defined malice as the application of a lethal weapon against a vital body part, and Hartzog again indicated that he understood the element of malice.  Id. at 28.

Thus, it is apparent from the transcript that the trial court judge informed Hartzog that malice was an element of third degree murder; that he twice defined malice during the oral plea colloquy; and gave Hartzog the opportunity to express any misunderstanding he might have had.  As such, this Court finds that the transcript of petitioner's guilty plea supports the Superior Court's finding that petitioner's plea was knowing and voluntary, and there is no basis to rebut the statutory presumption of correctness which attaches to the factual component of this finding.  Accordingly, there is no arguable merit to the contention that Hartzog's counsel was ineffective in failing to object to the failure of either the written or oral plea colloquy to define "malice" as an element of third-degree murder.  Thus, Hartzog's ineffectiveness claim is without merit.

## 2.  Trial counsel's conflict of interest.

Petitioner next claims that trial counsel "was ineffective

16

based on his prior representation of Detective Fritz Golden, who was the chief investigator on Hartzog's case. Counsel informed Hartzog of the circumstances of his prior representation, but never informed the court of the possible conflict." (Doc. No. 1, petition).  In support of his position, Hartzog relies on Commonwealth vs. Hill, 417 A.2d 745 (Pa. Super 1979), for the proposition that counsel had a duty to inform the court of the potential conflict, because it is the court and not the defendant who determines if the circumstances constitute a conflict of interest.  In <u>Hill</u>, the Pennsylvania Superior Court found that the lower court erred in not holding a hearing to determine whether trial counsel rendered ineffective assistance of counsel, where Hill was unaware, until the trial commenced, that the Commonwealth's chief witness was a client of his counsel and that there was a potential for a conflict of interest.

The Pennsylvania Superior Court's decision in the instant case clearly refutes the applicability of <u>Hill</u>, as Hartzog's counsel discovered the potential conflict at the outset of his representation and consulted Hartzog prior to his preliminary hearing.  Specifically, the Court held that:

17

Our review of the record reflects that the PCRA court addressed the question of the potential conflict at the evidentiary hearing on the PCRA petition.   At the hearing, Appellant testified that his plea counsel had informed him that he had previously represented Detective Golden.  N.T., 3/27/02, at 14-15.  Appellant further testified that he indicated to plea counsel that he had no problem with the continued representation.   Id. at 25.   Plea counsel also testified that Appellant never requested him to discontinue his representation.   Id. at 84. Accordingly, Appellant's ineffectiveness claim lacks arguable merit.

(Doc. No. 7, Ex. 7, p. 11).

Thus, it is clear from the record that there was no conflict of interest and no basis to involve the court in any discussions concerning the alleged potential of conflict.   Accordingly, petitioner's ineffective assistance of counsel claim with respect to counsel's alleged conflict of interest is without merit.

### 3. Counsel's ineffectiveness in pursuing self-defense claim.

Petitioner next contends that counsel was ineffective for advising Hartzog to plead guilty when he had a meritorious self-defense claim to third degree murder.   He claims that plea counsel failed to interview an eyewitness, Florence Mock, concerning an allegedly exculpatory statement she gave police. Moreover, he states that at his PCRA hearing, Ms. Mock

18

"testified that Hartzog was defending himself from an attack initiated by the victim." (Doc. No. 1, petition).

To establish a defense of self-defense under Pennsylvania law, a defendant must show that he was free from fault in provoking or continuing the difficultly which resulted in the slaying; that he reasonably believed he was in imminent danger of death or great bodily harm and that there was a necessity to use such force to save himself therefrom; and that he did not violate the duty to retreat or avoid the danger.  Commonwealth vs. Mayfield, 585 A.2d 1069, 1071 (Pa. Super. 1991).

The Superior Court's review of the record reflects the following:

> [A]t the evidentiary hearing on March 27, 2002, Appellant testified that Florence Mock was his girlfriend at the time of the killing and was a witness to the incident. N.T., 3/27/02, at 7-8. Appellant's plea counsel testified that he had made several attempts to contact Ms. Mock, but she was represented by counsel, so he contacted her counsel to inquire about her testimony. <u>Id</u>. at 65-67, 80-81. Ms. Mock was also facing aggravated and simple assault charges in a separate criminal matter, and Appellant expressed concern that she might testify against him. <u>Id</u>. at 57, 66, 70; N.T., 3/7/03 at 25. Ms. Mock's counsel responded that, if Appellant's plea counsel could arrange the dismissal of the charges against Ms. Mock, he would allow plea counsel to interview her; Appellant's plea counsel did not have any such authority. <u>Id</u>. at 67.

Appellant's plea counsel was concerned about the inculpatory nature of Ms. Mock's testimony, based on the information provided by Appellant and Ms. Mock's statement to police that was provided in discovery. N.T., 3/27/02, at 69-70. Plea counsel was concerned because the information provided to him suggested that Appellant and Ms. Mock lured the victim to beat him in relation to collecting money from a drug deal. Concern centered on the fact that a knife that was present was either already open or opened by Appellant demonstrating deliberation and intent on the part of Appellant. Id. at 71-72. The Commonwealth was under an obligation to provide any statement that was exculpatory to Appellant which Ms. Mock would have given in her interview with the District Attorney's Office; the Commonwealth provided no such statement. Id. at 68-70. Appellant's plea counsel testified that he made a strategic decision to advise Appellant to plead guilty to third-degree murder because the testimony could suggest that Appellant was in the home of another person, where he took a bat from the living room, and he used unnecessary deadly force to collect a drug debt. Id. at 74-75.

Ms. Mock's counsel testified at the evidentiary hearing that, because of the criminal charges against Ms. Mock and the implication of Ms. Mock's participation in the charges against Appellant, counsel refused the request of Appellant's plea counsel to interview Ms. Mock or have his investigator interview her. N.T. 5/31/02, at 4-5. Further, Ms. Mock testified that, had she been called at trial, she would have testified that Appellant acted in self-defense. N.T., 3/7/03, at 12-15. Ms. Mock was apprehensive, however, that the Commonwealth might charge her for her involvement in the incident and that her testifying might impact on her efforts to get custody of her daughter, who was under the care of Children and Youth Services; she did not communicate her fear to her counsel, however. Id. at 19-20, 22-23. Ms. Mock admitted on cross-examination that it was her understanding that the

victim owed Appellant money for drugs.  Id. at 26-29.

In view of all of the evidence produced at the
evidentiary hearings on the PCRA petition, there was a
reasonable basis for plea counsel's strategic decision
not to pursue Ms. Mock's testimony at trial and to
advise Appellant to enter a plea of guilty to third-
degree murder.   Accordingly, plea counsel was not
ineffective.

(Doc. No. 7, Ex. 7, pp. 12-14).

In evaluating whether counsel's performance was deficient,
this Court "must defer to counsel's tactical decisions, avoid
"the distorting effects of hindsight" and give counsel the
benefit of a strong presumption of reasonableness.   See
Strickland at 689.  As such, this Court finds that the record
relied upon by the Superior Court supports a finding that plea
counsel's strategic decision in advising Hartzog to plea guilty
to third-degree murder was reasonable.   Thus, the Superior
Court's decision, in light of the circumstances, do not reflect
an unreasonable application of the Strickland test, nor is it an
unreasonable application of the facts in light of the evidence
presented in state court. Thus, Hartzog's claim of ineffective
assistance of counsel for plea counsel's recommendation that
Hartzog plead guilty to third-degree murder is without merit.

### 4.  Failure to file a motion withdrawing guilty plea and/or

**direct appeal.**

Hartzog's final claim is that he requested counsel to file a motion to withdraw his guilty plea immediately after sentencing and that counsel "refused to do so because there was no legal basis for the motion." (Doc. 1, petition). Petitioner further claims that he "is illiterate and did not know that he needed to file a motion to withdraw his plea and a direct appeal." Id.

If a motion to withdraw a guilty plea is made before sentencing, there is no absolute right to withdraw the plea; rather, the defendant bears the burden of showing a fair and just reason to withdraw the plea. United States vs. Brown, 250 F.3d 811, 815 (3d Cir. 2001); United States vs. Isaac, 141 F.3d 477, 485 (3d Cir. 1998). "A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." Brown at 815 (further citation omitted).

Hartzog asserts only that he requested his counsel to withdraw his guilty plea. (Doc. No. 1, petition). He offers no basis for withdrawing his guilty plea. Thus, he cannot show that he was prejudiced by counsel's failure to pursue a motion

to withdraw.  In any event, Hartzog does not explain how counsel's alleged failure to file a motion to withdraw his plea relates to his plea of guilty, and nothing in the record suggests that petitioner would not have pled guilty but for his counsel's now allegedly deficient performance, particularly in light of declarations made during his guilty plea colloquy and sentencing.[2]   See Blackledge vs. Allison, 431 U.S. 63, 74

---

[2]When given the opportunity at sentencing to speak to the Judge, Hartzog responded with the following:

> THE JUDGE:      So you sort of compromised with this
> plea agreement.  And in compromising
> with the plea agreement, you've
> given yourself the opportunity to
> still get out and still have a
> constructive life. Whether that
> happens is up to you.  Do you
> understand?

> THE DEFENDANT:    Yes.

> THE JUDGE:    Do you have any questions?

> THE DEFENDANT:    No.

> THE JUDGE:    Is there anything I can answer for you or
> help you with at this time?

> THE DEFENDANT:    No.

> THE JUDGE:    Okay.  Then the sentence is imposed.

(Doc. 7, Exhibit , N.T., p. 38).  At no time did Hartzog

(1977)("Solemn declarations in open court carry a strong presumption of verity."). Thus, the Court concludes that it is clear from the record that there is no basis for petitioner's ineffective assistance of counsel claim with respect to counsel failing to file a motion to withdraw the guilty plea.

**Failure to file a direct appeal**

Hartzog claims that he informed counsel of his desire to file a direct appeal and none was filed. (Doc. 1, petition).

While such a claim is cognizable in proceedings under §2254, see Roe vs. Flores-Ortega, 528 U.S. 470 (2000), petitioner fails, however, to explain how such renders his guilty plea involuntary and unknowing. In addition, petitioner one again fails to satisfy the prejudice requirement of Strickland.

As is evidenced from the Pennsylvania Superior Court's review of the petitioner's PCRA petition, petitioner was permitted to challenge his conviction with no limitation placed on any issue presented. Thus, in effect, petitioner's direct appeal was reinstated through his PCRA proceedings, and petitioner cannot argue any prejudice suffered from the

mention that he wished to withdraw his guilty plea.

deprivation of a direct appeal. The petition will be denied as to this claim.

## III.  <u>Conclusion</u>

Having conducted the requisite review of the record, the Court finds Hartzog's guilty plea to have been voluntary, knowing and intelligent.  As such, there is no support in the record for petitioner's claims of ineffective assistance of counsel and he is, therefore, not entitled to federal habeas corpus relief. For all of the foregoing reasons, his petition for writ of habeas corpus will be denied.

**IT IS HEREBY ORDERED THAT:**

1.   The petition for writ of habeas corpus, (Doc. 1) is **DENIED**.

2.   The Clerk of Court is directed to **CLOSE** this case.

3.   There is no basis for the issuance of a certificate of appealability.


s/Malcolm Muir                        
MUIR
United States District Judge